1  WHITNEY A. DAVIS, #149523 E-filing
   **CHARTER DAVIS, LLP**
2  Attorneys at Law
   1730 I Street, Suite 240
3  Sacramento, California 95814
   Telephone:    (916) 448-9000
4  Facsimile:    (916) 448-9009

5  Attorneys for VIAD CORP

**FILED**
AUG 1 7 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

6

7              **UNITED STATES DISTRICT COURT**

8              **NORTHERN DISTRICT OF CALIFORNIA**

                                    C07 - 04243

9                                    )  Federal Case No.
   JACK L. HOWARD, et al.,          )
10                                   )  State Case No. **RG07334596**
            Plaintiffs,             )
11                                   )
            v.                       )  **NOTICE OF REMOVAL OF ACTION**
12                                   )  **PURSUANT TO 28 U.S.C. SECTIONS**
                                    )  **1442(a)(1) AND 1446(a)**
13  ASBESTOS CORPORATION LIMITED,    )
    et al.,                          )
14                                   )
            Defendants.              )
15  _____ )

16

17         **TO THE CLERK OF THE ABOVE-REFERENCED COURT:**

           **PLEASE TAKE NOTICE** that Defendant, VIAD CORP, (hereinafter "VIAD"), hereby
18
   removes to this Court the state court action described below, pursuant to 28 U.S.C. sections
19
   1442(a)(1) and 1446(a).

20
                        **PRELIMINARY MATTERS**
21
           1.    On July 9, 2007, Plaintiff JACK L. HOWARD, filed this lawsuit ("Complaint")
22
   in the Superior Court of the State of California, County of Alameda, Case No. RG07334596, and
23
   entitled JACK L. HOWARD vs. ASBESTOS CORPORATION LIMITED, et al. A true and
24
   correct copy of the Complaint is attached hereto as Exhibit "A."
25
           2.    Defendant VIAD first received the Complaint on July 23, 2007, with a Summons
26
   reflecting that service of process took place by process server on VIAD's authorized agent on
27
   July 23, 2007. A true and correct copy of the summons is attached hereto included in Exhibit
28
   "B".

Charter Davis LLP
Attorneys at Law
1730 I Street, #240
Sacramento, CA 95814
phone (916) 448-9000

1

File by Fax

GO 44 SEC. N
NOTICE OF ASSIGNMENT
TO MAGISTRATE JUDGE SENT

1     3.     This Notice of Removal is timely in that it is filed within 30 days of service of the

2    Complaint, with three additional days added by Rule 6 by which VIAD received its first notice

3    of the facts indicating that the case was removable within the meaning of 28 U.S.C. §1446(b).

4                            **NATURE OF THE CASE**

5     4.     This case is based upon Plaintiff JACK L. HOWARD developed an asbestos-related

6    disease, specifically lung cancer, allegedly caused by his exposure to asbestos dust and/or fibers.

7     5.     Plaintiffs assert negligence, strict product liability, failure to warn, breach of

8    warranties, fraud, conspiracy, enterprise liability, loss of consortium, punitive damages, against

9    VIAD.

10                            **CONCLUSION**

11     6.     Removal of this action is proper under 28 U.S.C. §1442, because it is a civil action

12   brought in a state court, and the federal district courts have original jurisdiction over the subject

13   matter pursuant to 28 U.S.C. §1442(a)(l) because VIAD CORP, was acting under an officer or

14   agency of the United States government, namely the United States Navy.

15       THEREFORE, VIAD, pursuant to these statutes and in conformance with the requirements

16   set forth in 28 U.S.C. §1446, remove this action for trial from the Superior Court of the State of

17   California for the County of San Francisco.

18   Dated: August 16, 2007             **CHARTER DAVIS, LLP**

19

20                        By:    /s/ Whitney A. Davis

                                   Attorneys for Defendant Viad Corp

21

22

23

24

25

26

27

28

Charter Davis LLP
Attorneys at Law
1730 I Street, #240
Sacramento, CA 95814
phone (916) 448-9000

2

**EXHIBIT A**

1   Ronald J. Shingler, Esq. (C.S.B. #142089)
    Aaron H. Simon, Esq. (C.S.B. #67552)
2   Richard Hobin, Esq. (C.S.B. #76791)
    HOBIN, SHINGLER & SIMON, LLP
3   1011 A Street
    Antioch, CA 94509-2323
4   (925) 757-7585

5   Attorneys for Plaintiffs

6

7

FILED BY FAX
ALAMEDA COUNTY

July 09, 2007

CLERK OF
THE SUPERIOR COURT
By Rosanne Case, Deputy

CASE NUMBER:
RG07334596

8            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 IN AND FOR THE COUNTY OF ALAMEDA

10   JACK L. HOWARD                          Case No.
     and YVONNE M. HOWARD,
11                                           COMPLAINT FOR PERSONAL
            Plaintiffs,                      INJURIES; NEGLIGENCE; STRICT
12                                           LIABILITY; FAILURE TO WARN;
     vs.                                     BREACH OF WARRANTIES; FRAUD;
13                                           CONSPIRACY; ENTERPRISE
     ASBESTOS CORPORATION LIMITED;           LIABILITY; LOSS OF CONSORTIUM;
14   ALFA LAVAL, INC.; AMERICAN              PUNITIVE DAMAGES
     LAUNDRY MACHINERY, INC.; BAILEY
15   METER COMPANY; BORGWARNER               (Via Facsimile)
     MORSE TEC INC. as successor-in-interest to
16   BORG-WARNER CORPORATION;
     BUFFALO PUMPS, INC.; BW/IP INC.
17   formerly known as BORG-WARNER
     INDUSTRIAL PRODUCTS, successor to
18   BYRON JACKSON PUMPS; CARLISLE
     CORPORATION; CARVER PUMP
19   COMPANY; CERTAINTEED
     CORPORATION; COFFIN TURBO PUMP,
20   INC.; CROWN CORK AND SEAL
     COMPANY, INC.; CSR, LTD. also known as
21   COLONIAL SUGAR REFINING CO.;
     BABCOCK BORSIG POWER, INC. formerly
22   known as DB RILEY formerly known as
     RILEY STOKER CORPORATION;
23   DAIMLERCHRYSLER CORPORATION;
     DURAMETALLIC CORPORATION;
24   EATON CORPORATION, individually and
     as successor-in-interest to CUTLER-
25   HAMMER; ELLIOTT COMPANY;
     FLOWSERVE CORPORATION, individually
26   and as successor-in-interest to ALDRICH
     PUMPS and DURCO PUMPS; FORD
27   MOTOR COMPANY; FOSTER WHEELER,
     LLC; FRANKLIN ELECTRIC CO., INC.;
28   GARLOCK, INC.; ELECTRIC COMPANY;
     GENERAL MOTORS CORPORATION;

                                      1

| | |
|---|---|
| 1 | GENERAL REFRACTORIES COMPANY; GEORGIA-PACIFIC CORP.;GOULDS |
| 2 | PUMPS, INC.; HONEYWELL INTERNATIONAL INC., individually and as |
| 3 | successor-in-interest to ALLIED SIGNAL and BENDIX; HOPEMAN BROTHERS, INC.; |
| 4 | IMO INDUSTRIES INC., individually and as parent, alter ego, formerly known as, doing |
| 5 | business as, and successor-in-interest to IMO DELAVAL INC.; INGERSOLL-RAND |
| 6 | COMPANY; J.T. THORPE & SON, INC.; KAISER GYPSUM COMPANY, INC.; |
| 7 | LAMONS GASKET COMPANY formerly known as POWER ENGINEERING & |
| 8 | EQUIPMENT CO.; NORTHERN PUMP, a division of MCNALLY INDUSTRIES LLC; |
| 9 | OWENS-ILLINOIS, INC.; RAPID AMERICAN CORPORATION; PARKER- |
| 10 | HANNIFIN CORPORATION; PATTERSON PUMP COMPANY, A SUBSIDIARY OF |
| 11 | GORMAN-RUPP COMPANY, individually and as successor-in-interest to C.H. |
| 12 | WHEELER MANUFACTURING and GRISCOM-RUSSELL; PLANT |
| 13 | INSULATION; PNEUMO ABEX CORPORATION; SOCO WEST, INC., |
| 14 | formerly known as BRENNTAG WEST, INC., formerly known as SOCO-LYNCH |
| 15 | CORPORATION; STERLING FLUID SYSTEMS (USA), INC., formerly known as |
| 16 | PEERLESS PUMPS; SULZER PUMPS (US) INC. individually and as successor-in-interest |
| 17 | to PACO PUMPS, INC.; THOMAS DEE ENGINEERING, CO., INC.; THORPE |
| 18 | INSULATION COMPANY; UNIROYAL, INC.; VIACOM INC., successor by merger to |
| 19 | CBS CORPORATION and formerly known as WESTINGHOUSE ELECTRIC |
| 20 | CORPORATION; VIAD CORP.; WARREN PUMPS, INC.; and FIRST DOE through |
| 21 | TWO HUNDREDTH DOE, inclusive, |
| 22 | Defendants.                          / |

23    Plaintiff JACK L. HOWARD complains of defendants, and each of them, and alleges:

24    **FIRST CAUSE OF ACTION**
      **(Negligence)**

25

26    1.    Plaintiff JACK L. HOWARD brings this action on his own behalf and will

27    hereinafter be referred to as "plaintiff." Plaintiff knows of no other parties who should be

28    named as a plaintiff herein.

2

Complaint for Personal Injuries

2.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 200, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of said fictitiously named defendants are, through their negligence, intentional torts, and/or conduct giving rise to strict liability, responsible or liable in some manner for the occurrences herein alleged, and that the injuries herein alleged were the direct and legal result of said negligence, intentional torts, and/or conduct giving rise to strict liability.

3.    At all times mentioned in this complaint each of the defendants was the agent and employee of each of the remaining defendants, and by their actions as alleged in this complaint each defendant was acting within the course and scope of this agency and employment, and each defendant has ratified and approved the acts of the remaining defendants.

4.    Defendants ASBESTOS CORPORATION LIMITED; ALFA LAVAL, INC.; AMERICAN LAUNDRY MACHINERY, INC.; BAILEY METER COMPANY; BORGWARNER MORSE TEC INC. as successor-in-interest to BORG-WARNER CORPORATION; BUFFALO PUMPS, INC.; BW/IP INC. formerly known as BORG-WARNER INDUSTRIAL PRODUCTS, successor to BYRON JACKSON PUMPS; CARLISLE CORPORATION; CARVER PUMP COMPANY; CERTAINTEED CORPORATION; COFFIN TURBO PUMP, INC.; CROWN CORK AND SEAL COMPANY, INC.; CSR, LTD. also known as COLONIAL SUGAR REFINING CO.; BABCOCK BORSIG POWER, INC. formerly known as DB RILEY formerly known as RILEY STOKER CORPORATION; DAIMLERCHRYSLER CORPORATION; DURAMETALLIC CORPORATION; EATON CORPORATION, individually and as successor-in-interest to CUTLER-HAMMER; ELLIOTT COMPANY; FLOWSERVE CORPORATION, individually and as successor-in-interest to ALDRICH PUMPS and DURCO PUMPS; FORD MOTOR COMPANY; FOSTER WHEELER, LLC; FRANKLIN ELECTRIC CO., INC.; GARLOCK, INC.; ELECTRIC COMPANY; GENERAL MOTORS CORPORATION; GENERAL REFRACTORIES COMPANY; GEORGIA-PACIFIC CORP.; GOULDS PUMPS, INC.;

3

1    HONEYWELL INTERNATIONAL INC., individually and as successor-in-interest to ALLIED
2    SIGNAL and BENDIX; HOPEMAN BROTHERS, INC.; INDUSTRIES INC., individually and
3    as parent, alter ego, formerly known as, doing business as, and successor-in-interest to IMO
4    DELAVAL INC.; INGERSOLL-RAND COMPANY; J.T. THORPE & SON, INC.; KAISER
5    GYPSUM COMPANY, INC.; LAMONS GASKET COMPANY formerly known as POWER
6    ENGINEERING & EQUIPMENT CO.; NORTHERN PUMP, a division of MCNALLY
7    INDUSTRIES LLC; OWENS-ILLINOIS, INC.; RAPID AMERICAN CORPORATION;
8    PARKER-HANNIFIN CORPORATION; PATTERSON PUMP COMPANY, A SUBSIDIARY
9    OF GORMAN-RUPP COMPANY, individually and as successor-in-interest to C.H.
10   WHEELER MANUFACTURING and GRISCOM-RUSSELL; PLANT INSULATION;
11   PNEUMO ABEX CORPORATION; SOCO WEST, INC., formerly known as BRENNTAG
12   WEST, INC., formerly known as SOCO-LYNCH CORPORATION; STERLING FLUID
13   SYSTEMS (USA), INC., formerly known as PEERLESS PUMPS; SULZER PUMPS (US)
14   INC. individually and as successor-in-interest to PACO PUMPS, INC.; THOMAS DEE
15   ENGINEERING, CO., INC.; THORPE INSULATION COMPANY; UNIROYAL, INC.;
16   VIACOM INC., successor by merger to CBS CORPORATION and formerly known as
17   WESTINGHOUSE ELECTRIC CORPORATION; VIAD CORP.; WARREN PUMPS, INC.;
18   and FIRST DOE through TWO HUNDREDTH DOE, inclusive, are at all times
19   herein mentioned, and were corporations or other business entities organized and existing
20   under the laws of the state of California and/or qualified to do business in this state.

21         BORGWARNER MORSE TEC INC. is sued herein not only in its own capacity, but
22   formerly known as DB RILEY formerly known as RILEY STOKER CORPORATION.

23         BW/IP INC. is sued herein not only in its own capacity, but formerly known as BORG-
24   WARNER INDUSTRIAL PRODUCTS, successor to BYRON JACKSON PUMPS.

25         CSR, LTD. is sued herein not only in its own capacity, but also known as COLONIAL
26   SUGAR REFINING CO.

27         BABCOCK BORSIG POWER, INC. is sued herein not only in its own capacity but
28   formerly known as DB RILEY formerly known as RILEY STOKER CORPORATION.

4

Complaint for Personal Injuries

1    EATON CORPORATION, is sued herein not only in its own capacity but individually

2    and as successor-in-interest to CUTLER-HAMMER.

3    FLOWSERVE CORPORATION, is sued herein not only in its own capacity but

4    individually and as successor-in-interest to ALDRICH PUMPS and DURCO PUMPS.

5    HONEYWELL INTERNATIONAL INC. is sued herein not only in its own capacity, but

6    as successor-in-interest to ALLIEDSIGNAL and BENDIX.

7    IMO INDUSTRIES, INC. is sued herein not only in its own capacity but individually and

8    as parent, alter ego, formerly known as, doing business as, and successor-in-interest to IMO

9    DELAVAL, INC.

10    LAMONS GASKET COMPANY is sued herein not only in its own capacity but

11    formerly known as POWER ENGINEERING & EQUIPMENT CO.

12    NORTHERN PUMP is sued herein not only in its own capacity but as a division of

13    MCNALLY INDUSTRIES LLC.

14    PATTERSON PUMP COMPANY is sued herein not only in its own capacity but as a

15    subsidiary of GORMAN-RUPP COMPANY, individually and as successor-in-interest to C.H.

16    WHEELER MANUFACTURING and GRISCOM-RUSSELL.

17    SOCO WEST, INC., is sued herein not only in its own capacity but formerly known as

18    BRENNTAG WEST, INC., formerly known as SOCO-LYNCH CORPORATION.

19    STERLING FLUID SYSTEMS (USA), INC. is sued herein not only in its own capacity

20    but formerly known as PEERLESS PUMPS.

21    SULZER PUMPS (US) INC. is sued herein not only in its own capacity but as successor-

22    in-interest to PACO PUMPS, INC.

23    VIACOM INC., is sued herein not only in its own capacity but as successor by merger to

24    CBS CORPORATION and formerly known as WESTINGHOUSE ELECTRIC

25    CORPORATION.

26    5.    At all times mentioned herein defendants, and each of them, were engaged in the

27    business of mining, milling, manufacturing, testing, developing, processing, importing,

28    converting, compounding, assembling, fabricating, modifying, designing, specifying,

5

1 │ approving, supplying, distributing, delivering, packaging, labeling, advertising, marketing,

2 │ warranting, applying, installing, and inspecting asbestos, and products produced therefrom, for

3 │ sale to and use by members of the general public, as well as for sale to and use by other parties

4 │ to manufacture, assemble, supply, distribute, label, apply and install products made therefrom,

5 │ or both.

6 │     6.     The defendants, and each of them, acting through their agents, servants and/or

7 │ employees, cause, and have caused in the past, certain asbestos-containing products and

8 │ asbestos-related insulation, fireproofing, friction, gasket and building materials to be placed on

9 │ the market and in the stream of interstate commerce with the result that said products and

10 │ materials came into use by plaintiff and those working in close proximity to plaintiff at relevant

11 │ times herein.

12 │     7.     Plaintiff JACK L. HOWARD was exposed to asbestos during the course of his

13 │ work as follows:

14 │ **A. Childhood Exposure (1932 - 1941)**

15 │     Mr. Howard was born in 1932 in Fort Dodge, Iowa. He lived there until his family

16 │ moved to California just prior to World War II. While living in Fort Dodge, Mr. Howard lived

17 │ in the family home with his father, who was employed as a plant worker by a sheet rock, wall

18 │ texture and joint compound manufacturing company[1] in Fort Dodge.

19 │     The manufacturing facility where Mr. Howard's father worked was contaminated with

20 │ asbestos fiber, which was utilized in the manufacture of joint compound, wall texture, and sheet

21 │ rock. As a consequence, Mr. Howard's father was exposed to asbestos on a routine and regular

22 │ basis each and every day that he work at the facility. Consequently, his work clothes - which he

23 │ wore home - as well as his person and his hair, were contaminated with asbestos fibers on a

24 │ daily basis. Furthermore, the interior of the family car was contaminated with these fibers when

25 │ Mr. Howard drove the family car home, and the family home was similarly contaminated from

26

27 │     [1]Plaintiff does not recall the name of the sheet rock, wall texture and joint compound manufacturer. There were
28 │ several such companies located in Fort Dodge during time periods relevant herein, including but not limited to, the National Gypsum Company, the United States Gypsum Company, and Georgia-Pacific. Plaintiffs reserve the right to amend this complaint once the identity of the manufacturer is determined.

6

Complaint for Personal Injuries

1 | these fibers when Mr. Howard's father arrived there. His contaminated work clothes were
2 | washed in the family home.

3 | Thus, by living in the family home and riding in the family car, Mr. Howard was
4 | routinely and regularly exposed to asbestos fibers, from the manufacturing facility, which were
5 | introduced into the home and car through Mr. Howard's father.

6 | Plaintiff's exposure to asbestos while during this time frame was a substantial factor
7 | which contributed to his development of lung cancer.

8 | **B. United States Navy (1951 - 1954)**

9 | Plaintiff served in the United States Navy during the Korean War. He joined the Navy In
10 | San Francisco on June 5, 1951 and was honorably discharged in San Diego on May 16, 1955.
11 | He served his basic training at the San Diego Naval Station in San Diego, California. Shortly
12 | thereafter, he boarded the *U.S.S. Taussig* (DD 746) as a sailor and supply clerk. He served
13 | aboard the *U.S.S. Taussig* until his discharge from the Navy. San Diego was the home port for
14 | this vessel during Mr. Howard's entire time aboard.

15 | As a supply clerk, plaintiff was stationed below decks. He maintained the ships
16 | inventory of materials, including products that were used for the maintenance and operation of
17 | the ship. These materials included, but were not limited to, asbestos-containing pipecovering,
18 | block, cement, gaskets, packing, valves, pumps and refractory materials. The supply quarters
19 | were contaminated with asbestos fibers released from these products during stocking and
20 | packaging. All who entered the supply quarters, including plaintiff, were exposed to these
21 | asbestos fibers.

22 | As a supply clerk, plaintiff routinely and regularly walked to all areas of the ship to
23 | deliver necessary supplies. As a consequence, he routinely and regularly walked to and through
24 | the engine and boiler spaces of the ship to deliver supplies. The engine and boiler spaces were
25 | contaminated with asbestos fibers released from pipecovering, block, cement, gaskets, packing,
26 | pumps, valves, boilers and refractory materials. A portion of this contamination resulted from
27 | work performed by shipyard employees and outside contractors. All who entered these spaces,
28 | including plaintiff, were exposed to asbestos fiber.

7

1        Plaintiff was aboard when the *U.S.S. Taussig* sailed to Korea. During this stint, the

2  *U.S.S. Philip* sailed through rough seas. The extreme stress place on the *U.S.S. Taussig* caused

3  asbestos-containing insulation to twist and crack, and resulted in the release of visible dust in all

4  areas of the ship where pipecovering, block and cement were present. The fiber contributed to

5  the overall contamination of the interior spaces of the ship. All who were aboard the ship

6  during these rough seas, including plaintiff herein, were exposed to asbestos released into the

7  interior spaces of the ship.

8        Off the coast of Korea, the *U.S.S. Taussig* was actively involved in shore bombardment.

9  The firing of the big guns on the ship caused the vessel to shake and vibrate intensely. As a

10  consequence, asbestos fiber was released into the interior spaces of the ship, furthering

11  contaminating the vessel. All who were aboard the ship during these bombardments, including

12  plaintiff herein, were exposed to asbestos released into the interior spaces of the ship during the

13  bombardments.

14        The *U.S.S. Taussig* was overhauled three separate times when Mr. Howard was aboard.

15  These overhauls occurred at the Mare Island Naval Shipyard, Pearl Harbor, and Bremerton,

16  Washington. During all three overhauls, asbestos fiber was released into the interior spaces of

17  the ship. These fibers came from several products, including but not limited to, pipecovering,

18  block, cement, cloth, gaskets, packing, valves, pumps, boilers, turbines, and refractory

19  materials. Plaintiff lived aboard the *U.S.S. Taussig* during all three of these overhauls, and as a

20  consequence he was regularly and routinely exposed to asbestos on daily basis throughout each

21  overhaul.

22        Plaintiff's exposure to asbestos while serving in the United States Navy was a substantial

23  factor which contributed to his development of lung cancer.

24    **C. Texaco Service Station (1955 - 1960)**

25        From 1955 through 1960, Mr. Howard worked as a service station attendant for Bob

26  McCall and Lynn Wilson's Texaco Station, located on the corner of Mt. Vernon Avenue and

27  16th Street in San Bernardino, California. Mr. Howard pumped gas, cleaned windshields, and

28  checked oil levels. He changed tires and repaired flats. He did oil and lubrication jobs. He

8

1  replaced spark plugs and points. He replaced radiators and water pumps. He performed brake

2  jobs, where he both removed and replaced brakes with asbestos-containing brake pads on all

3  makes and models of vehicle, including but not limited to, Fords, Chevrolets, and Dodges. He

4  installed and replaced asbestos-containing motor, muffler, and pump gaskets.

5  Plaintiff's exposure to asbestos while working at this Texaco Service Station was a

6  substantial factor which contributed to his development of lung cancer.

7  **D. Salesman (1960 - 1984)**

8  From 1960 through 1984, Mr. Howard worked as a sales representative for the Mayan

9  Food Company in San Bernardino, California. Mayan Food Company was a wholesale supplier

10  to restaurants. He also worked briefly as a sales representative for Glenco, another restaurant

11  supply company located in Southern California.

12  No asbestos exposure is alleged during this time frame.

13  **E. Liquide American Corporation (1984 - 1997)**

14  From 1984 through 1997, Mr. Howard was employed as a laboratory worker for Liquide

15  American in Long Beach, California. He worked in the Specialty Gas Division. He filled metal

16  gas canisters that were used in hospitals.

17  No asbestos exposure is alleged during this time frame.

18  8. During the course and scope of his employment plaintiff continually worked with,

19  and in close proximity to others who were applying, installing and removing asbestos and

20  asbestos-containing products including, but not limited to insulation, block, refractory, cements,

21  gaskets, packing, pipe covering, spray-on fireproofing, and building construction materials as

22  described above, causing him to sustain by-stander exposure.

23  9. Plaintiff was exposed to asbestos fibers which were released from asbestos-

24  containing products and asbestos-related materials which were mined, milled, manufactured,

25  processed, imported, converted, compounded, applied, installed, designed, specified, inspected,

26  approved, supplied, controlled, distributed and/or sold by defendants, and each of them. Said

27  exposure was the direct and legal cause of plaintiff's development of an illness known and

28  designated as lung cancer and other illnesses and disabilities whose relationship to asbestos is

9

1  as yet unknown to plaintiff herein.

2      10.    At all times relevant herein, defendants and each of them, owed a duty of due care
3  which required them to exercise ordinary care to protect against an unreasonable risk of harm.
4  This duty was owed to plaintiff.

5      11.    Plaintiff's development of lung cancer and related conditions is the direct and
6  legal result of the conduct of the defendants, and each of them, in that they negligently and
7  carelessly researched, tested or failed to test, manufactured, designed, specified, developed,
8  labeled, advertised, marketed, warranted, inspected, fabricated, modified, applied, installed,
9  distributed and supplied asbestos and asbestos-containing products. Defendants, and each of
10  them, without adequate warning to the consumer or user, produced, sold, and otherwise put into
11  the stream of interstate commerce the foregoing materials which said defendants and each of
12  them knew, or in the exercise of ordinary care should have known, were deleterious, poisonous
13  and highly harmful to plaintiff's body, lungs, respiratory system, skin and health. Further,
14  defendants and each of them knew, or through the exercise of ordinary care should have known,
15  that exposure to asbestos is, and at all times relevant herein has been, associated with terminal
16  and incurable diseases which have caused and continue to cause death.

17      12.    During the time period when plaintiff was exposed to asbestos in the manner
18  described above, he had no knowledge that said exposure placed him at risk for developing the
19  diseases described herein and therefore had no opportunity, nor can he be charged with a duty
20  or breach of duty, to protect himself against said harmful asbestos exposure. Plaintiff had no
21  knowledge that the alleged conduct, misconduct and culpability of defendants, and each of
22  them, were actionable at law when they were committed and cannot be charged with knowledge
23  or inquiry thereof. Plaintiff's physician diagnosed him with lung cancer on December 8, 2006.
24  This action is being brought within the appropriate statutes of limitation for this personal injury
25  action.

26      13.    The lung cancer and related conditions that afflict plaintiff developed at a
27  microscopic and undetectable level over an extended period of time, without noticeable trauma,
28  and was therefore unknown and unknowable to plaintiff until his physician diagnosed him with

10

Complaint for Personal Injuries

1   lung cancer within the statute of limitations for this personal injury action. Prior to his
2   diagnosis, plaintiff did not know, nor through the exercise of reasonable diligence could he have
3   known, that his disease and related conditions were caused by his exposure to the defendants'
4   asbestos and asbestos-containing products.

5       14.     As a direct and legal result of the conduct of defendants, and each of them,
6   plaintiff JACK L. HOWARD developed an asbestos-related disease known as lung cancer, and
7   as a further direct and legal result of the conduct of defendants, and each of them, it has been
8   necessary for plaintiff to retain the services of physicians, hospitals, hospice, and other health
9   care professionals to diagnose, treat, and provide palliative care for plaintiff as he approaches
10  the end of his life. As a further direct and legal result of the conduct of the defendants, and each
11  of them, it will be necessary for plaintiff to retain the services of the health care profession in
12  the future for an indeterminable period of time. Plaintiff does not yet know the full extent of
13  treatment that will be required nor the reasonable value of medical services rendered or to be
14  rendered to plaintiff herein and therefore requests leave to amend this complaint when that sum
15  is determined.

16      15.     As a direct and legal result of the conduct of the defendants, and each of them,
17  and of plaintiff's diagnosis of lung cancer, plaintiff has been unable to follow his normal or any
18  gainful occupation for certain periods preceding and following his diagnosis, and plaintiff will
19  remain disabled for an indeterminable time. Plaintiff has incurred, and will incur, loss of
20  income, wages, pensions, earning potential, profits and commissions, and other pecuniary
21  losses. Plaintiff does not know the amount of said past and future losses and therefore requests
22  leave to amend this complaint when that sum is determined.

23      16.     As a further direct and legal result of the negligence of defendants, and each of
24  them, and plaintiff's diagnosis of lung cancer, plaintiff has endured and continues to endure
25  unrelenting physical and emotional pain and suffering, emotional distress, mental distress,
26  mental anguish, fear, nervousness, grief, anxiety, worry, humiliation and indignity, the full
27  nature and extent of which are presently unknown to plaintiff, and for which plaintiff has
28  incurred general damages in excess of $50,000.00.

11

1    17.    As a further direct and legal result of the conduct of defendants, and each of them,
2  plaintiff has been damaged to his health, strength, and activity in an amount in excess of
3  $50,000.00 in addition to special damages alleged herein.

4    18.    The foregoing acts of the defendants, and each of them, were done wantonly,
5  willfully, oppressively, and in conscious disregard of the safety of plaintiff herein, by the
6  defendants, and each of them, in that the defendants, and each of them, prior to and at the time
7  of sale, knew that the foregoing asbestos fibers released from said products during the
8  foreseeable operations of applying and removing same, were dangerous when inhaled. The
9  defendants, and each of them, either did not warn or insufficiently warned regarding the
10  dangerous nature of said products, nor placed a sufficient warning on the said product or
11  package thereof regarding said dangerous nature, despite knowing that said products would be
12  used by plaintiff and others who had no knowledge of the dangerous and hazardous nature
13  thereof, and therefore plaintiff is entitled to an award of punitive damages

14    WHEREFORE, plaintiff prays judgment as hereinafter set forth.

15                    **SECOND CAUSE OF ACTION**
                       **(Strict Products Liability)**
16
      AS AND FOR A SECOND CAUSE OF ACTION, plaintiff JACK L. HOWARD
17
    compalins of the defendants, and each of them, and alleges:
18
      19.    Plaintiff, by this reference, hereby incorporates and makes a part hereof, as
19
    though fully set forth herein, each and every allegation contained in the First Cause of Action
20
    herein, except allegations pertaining to negligence.
21
      20.    At all times mentioned herein defendants, and each of them, during the ordinary
22
    course of business, mined, milled, manufactured, imported, supplied, distributed, delivered,
23
    packaged, labeled, advertised, sold, marketed, installed, applied and otherwise introduced into
24
    the stream of commerce asbestos and asbestos-containing products which were defective due to
25
    their design, manufacture, insufficiency or lack of warning, and/or failure to meet ordinary user
26
    or consumer expectations of safety when used in an intended or reasonably foreseeable manner.
27
      21.    The asbestos and asbestos-containing products were defective when the
28
    defendants, and each of them, marketed and introduced them into the stream of commerce.

                                        12

Complaint for Personal Injuries

1  Defendants, and each of them, knew that the aforementioned products would be used

2  without inspection for defects by the user thereof.

3      22.    At all times herein mentioned, plaintiff and/or plaintiff's employer purchased

4  from defendants, and each of them, asbestos and asbestos-containing products.

5      23.    At all times mentioned herein, plaintiff was unaware of the dangerous nature of

6  the aforementioned products.

7      24.    The aforementioned products were used by plaintiff and those in close proximity

8  to plaintiff in a foreseeable manner, and in the manner for which they were intended.

9      25.    As a direct and legal result of the conduct of the defendants, and each of them,

10  plaintiff developed and an asbestos-related disease known and designated as lung cancer, and

11  related conditions and disabilities as previously set forth, and as a further direct and legal result

12  plaintiff has incurred damages in excess of $50,000.00 in addition to the special damages

13  alleged herein.

14      WHEREFORE, plaintiff prays judgment as hereinafter set forth

15                    **THIRD CAUSE OF ACTION**
                        **(Failure to Warn)**

16

17      AS AND FOR A THIRD CAUSE OF ACTION, plaintiff JACK L. HOWARD complains

    of the defendants, and each of them, and alleges:

18

19      26.    Plaintiff, by this reference, hereby incorporates and makes a part hereof, as

    though fully set forth herein, each and every allegation contained in the First Cause of Action

20

    herein,  and each and every allegation contained in the Second Cause of Action, except those

21

    allegations pertaining to design and manufacturing defect.

22

23      27.    At all relevant times, the asbestos and asbestos-containing products which were

    mined,  milled, manufactured, tested, developed, processed, imported, converted, compounded,

24

    assembled, fabricated, modified, designed, specified, approved, sold, supplied, distributed,

25

    delivered, packaged, labeled, advertised, marketed, warranted, applied, installed, controlled and

26

    inspected by defendants, and each of them, were defective as a result of defendant's failure to

27

    warn or give adequate warning that the particular risk of developing an asbestos-related disease,

28

    and risk of death from an asbestos-related disease resulting from exposure to asbestos, rendered

13

Complaint for Personal Injuries

1 | the product unsafe for its intended or reasonably foreseeable use.

2 |        28.       At all relevant times, the defendants and each of them had specific knowledge of

3 | these risks or could have known of these risks by the application of scientific knowledge

4 | available at the time of mining, manufacturing, selling, supplying, distributing, marketing,

5 | specifying, approving, controlling, inspecting, applying and installing the asbestos and asbestos-

6 | containing products.

7 |        29.       As a direct and legal result of the conduct of the defendants, and each of them,

8 | plaintiff developed an asbestos-related disease known and designated as lung cancer, and

9 | related conditions and disabilities as previously set forth, and as a further direct and legal result

10 | plaintiff has incurred damages in excess of $50,000.00 in addition to the special damages

11 | alleged herein.

12 |        WHEREFORE, plaintiff prays judgment as hereinafter set forth.

13 |                          **FOURTH CAUSE OF ACTION**
                            **(Breach of Implied Warranties)**

14 |

15 | AS AND FOR A FOURTH CAUSE OF ACTION, plaintiff JACK L. HOWARD

    | complains of the defendants, and each of them, and alleges:

16 |

17 |        30.       Plaintiff, by this reference, hereby incorporates and makes a part hereof, as

    | though fully set forth herein, each and every allegation contained in the First Cause of Action

18 |

    | herein, except allegations pertaining to negligence.

19 |

20 |        31.       The defendants, and each of them, sold, supplied, delivered or otherwise

    | distributed to plaintiff, or to another purchaser or user who subsequently sold, supplied,

21 |

    | delivered or otherwise distributed to plaintiff, or to others working in close proximity to

22 |

    | plaintiff, the above-described asbestos and asbestos-containing products to which plaintiff was

23 |

    | exposed.

24 |

25 |        32.       The defendants, and each of them, knew the intended purpose of the asbestos and

    | asbestos-containing products prior to marketing said products, and knew or should have known

26 |

    | that dangerous levels of asbestos fiber would be released during the process of applying,

27 |

    | installing and removing these products.

28 |

                                            14

Complaint for Personal Injuries

33.     The defendants, and each of them, placed said asbestos and asbestos-containing products on the market without any warning, or with an inadequate warning, and by so doing impliedly warranted that said products were of good and merchantable quality and fit for their intended purpose.

34.     The defendants, and each of them, breached the implied warranties of merchantability and fitness for an intended purpose by marketing asbestos and asbestos-containing products without a warning, or with an inadequate warning, advising plaintiff and others working in close proximity to plaintiff that dangerous levels of asbestos fiber would be released during the process of applying, installing and removing said products.

35.     As a direct and legal result of the conduct of the defendants, and each of them, plaintiff developed an asbestos-related disease known and designated as lung cancer, and related conditions and disabilities as previously set forth, and as a further direct and legal result plaintiff has incurred damages in excess of $50,000.00 in addition to the special damages alleged herein.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.

## FIFTH CAUSE OF ACTION
### (Fraud)

AS AND FOR A FIFTH CAUSE OF ACTION, plaintiff JACK L. HOWARD complains of the defendants and each of them, and alleges:

36.     Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though fully set forth herein, each and every allegation contained in the First Cause of Action herein, except allegations pertaining to negligence.

37.     Pursuant to Section 1708 of the Civil Code of California the defendants, and each of them, owed a duty to plaintiff at all times relevant herein to abstain from injuring the plaintiff or infringing upon any of his rights.

38.     The defendants, and each of them, breached the duty they owed to plaintiff pursuant to Section 1708 of the Civil Code of California by willfully deceiving him with the intent to induce him to alter his position to his injury or risk. The defendants, and each of them, deceived the plaintiff and committed actionable fraud pursuant to Section 1709 and Section

15

1   1710 of the Civil Code of California.

2       39.     The defendants, and each of them, as more fully sct forth below, suggested as fact
3   that which was not true, and that which defendants, and each of them, did not bclicvc was truc.

4       40.     The defendants, and each of them, as more fully set forth below, asserted as fact
5   that which was not true, and that which defendants, and each of them, had no reasonable
6   grounds for believing was true.

7       41.     The defendants, and each of them, as more fully set forth below, suppressed facts
8   which they were obligated to disclose, and gave information of other facts which were likely to
9   mislead for want of communication of the undisclosed facts.

10      42.     The defendants, and each of them, made promises without any intention of
11  keeping those promises.

12      43.     Since 1924, the defendants, and each of them, have known and have possessed
13  the true facts of medical and scientific data and other knowledge which clearly indicated that
14  the materials and products referred to herein were and are hazardous to the health and safety of
15  the plaintiff, and others in plaintiff's position working in close proximity with such materials.
16  The defendants, and each of them, have known of the dangerous propensities of the
17  aforementioned materials and products since before that time, and with intent to deceive
18  plaintiff, and others in his position, and with the intent that he and such others should be and
19  remain ignorant of such

20  facts, and with the intent to induce plaintiff and such others to alter his and their positions to his
21  and their injury and/or risk and in order to gain advantages did do the following acts:

22      A.      Defendants, and each of them, did not label any of the aforementioned asbestos-
23              containing materials and products regarding the hazards of such materials and
24              products to the health and safety of plaintiff and others in plaintiff's position
25              working in close proximity with such materials until 1964, when certain of such
26              materials were labeled by some, but not all, of the defendants herein, despite the
27              fact that the knowledge of such hazards existed and was known to defendants, and
28              each of them, since 1924. By not labeling such materials as to their said hazards,

16

Complaint for Personal Injuries

1           defendants, and each of them, caused to be suggested as a fact to plaintiff and

2           plaintiff's employer that it was safe for plaintiff to work in close proximity to such

3           materials when in fact it was not true and defendants did not believe it to be true;

4     B.    Defendants, and each of them, suppressed information relating to the danger of

5           use of the aforementioned materials by requesting the suppression of information

6           to the plaintiff and the general public concerning the dangerous nature of the

7           aforementioned materials to workers and by not allowing such information to be

8           disseminated in a manner which would give general notice to the public and

9           knowledge of the hazardous nature thereof, when defendants were bound to

10          disclose such information;

11    C.    Defendants, and each of them, sold the aforementioned products and materials

12          plaintiff's employer and others without advising such employers and others of

13          dangers of use of such materials to persons working in close proximity thereto,

14          when defendants knew of such dangers, as set forth herein, and, as set forth

15          above, had a duty to disclose such dangers. Thereby, defendants caused to be

16          positively asserted to plaintiff's employer that which was not true and which

17          defendants had no reasonable ground for believing to be true, and in a manner

18          not warranted by the information possessed by said defendants, and

19          each of them, to wit, that it was safe for plaintiff to work in close

20          proximity to such materials;

21    D.    Defendants, and each of them, suppressed and continue to suppress from

22          everyone, including plaintiff and plaintiff's employer, medical and scientific data

23          and knowledge of the results of studies including, but not limited to, the

24          information and knowledge of the contents of the Lanza report. Although bound

25          to disclose it, defendants, and each of them, influenced A. J. Lanza to change his

26          report, the altered version of which was published in Public Health Volume 50 at

27          page 1 in 1935, thereby causing plaintiff to be and remain ignorant thereof.

28          Defendants, and each of them, caused Asbestos Magazine, a widely disseminated

17

1       trade journal, to omit mention of danger, thereby lessening the probability of

2       notice of danger to the users thereof;

3 E.   Defendants, and each of them, belonged to, participated in, and financially

4       supported the Asbestos Textile Institute and other industry organizations which,

5       and on behalf of defendants, and each of them, actively promoted the suppression

6       of information of danger to users of the aforementioned products and materials,

7       thereby misleading plaintiff and plaintiff's employer by the suggestions and

8       deceptions set forth above in this cause of action. The Dust Control Committee,

9       which changed its name to the Air Hygiene Committee, of the Asbestos Textile

10     Institute was specifically enjoined to study the subject of dust control.

11     Discussions in this committee were held many times regarding the dangers

12     inherent in asbestos and the dangers which arise from the lack of control of dust,

13     and the suppression of such information from 1946 to a date unknown to plaintiff

14     at this time;

15 F.   Commencing in 1930 with the study of mine and mill workers at Asbestos and

16     Thetford Mines in Quebec, Canada, and the study of workers at Raybestos-

17     Manhattan plants in Manheim and Charleston, South Carolina, defendants knew

18     and possessed medical and scientific information of the connection between

19     inhalation of asbestos fibers and asbestosis, which information was disseminated

20     through the Asbestos Textile Institute and other industry organizations to all other

21     defendants, and each of them, herein. Between 1942 and 1950, the defendants,

22     and each of them, acquired medical and scientific information of the connection

23     between inhalation of asbestos fibers and cancer, which information disseminated

24     through the Asbestos Textile Institute and other industry organizations to all

25     other defendants herein. Thereby, defendants suggested as a fact that which is not

26     true and disseminated other facts likely to mislead plaintiff and plaintiff's

27     employer and which did mislead them by withholding afore described medical

28     and scientific data and by not giving plaintiff or plaintiff's employer the true facts

18

Complaint for Personal Injuries

1   concerning such knowledge of danger, when defendants were bound to disclose
2   it;

3   G.  Defendants, and each of them, failed to warn plaintiff and plaintiff's employer that
4       said materials were dangerous when breathed and caused pathological effects
5       without noticeable trauma, despite the fact that defendants possessed knowledge
6       and were under a duty to disclose that such material was dangerous and a threat to
7       the health of persons coming into contact therewith;

8   H.  Defendants, and each of them, failed to provide plaintiff with information
9       concerning adequate protective masks and devices to be used when applying and
10      installing the products of the defendants, and each of them, despite the knowledge
11      of defendants and a duty to disclose that such protective measures were necessary
12      and would result in injury to the plaintiff and others applying and installing such
13      materials if not so advised;

14  I.  Defendants, and each of them, concealed from plaintiff the true nature of the
15      industrial exposure of plaintiff, and knew that plaintiff and anyone similarly
16      situated, upon inhalation of asbestos would, in time, develop irreversible
17      conditions of either pneumoconiosis, asbestosis or cancer, or all, and that the
18      materials to which he was exposed would cause pathological effects without
19      noticeable trauma despite the fact that defendants were under a duty to and bound
20      to disclose it; and

21  J.  Defendants, and each of them, failed to provide information to the public at large
22      and buyers, users, and physicians employed by plaintiff and plaintiff's employer
23      for the purpose of conducting physical examinations of plaintiff and others
24      working with or near asbestos of the true nature of the hazards of asbestos, and
25      that exposure to these materials would cause pathological effects without
26      noticeable trauma to the public, including buyers, users, and physicians employed
27      by plaintiff and plaintiff's employer so that said physicians could examine,
28      diagnose and treat plaintiff and others who were exposed to asbestos, despite the

19

1             fact that defendants, and each of them, were under a duty to so inform and said

2                  failure was misleading.

3      44.     Defendants, and each of them, having the aforementioned knowledge of facts and

4 knowing that the plaintiff did not possess such knowledge, acted falsely and fraudulently and

5 with full intent to cause plaintiff to remain unaware of those facts and to induce plaintiff to

6 work with and around unsafe products in a dangerous environment, all in violation of Section

7 1710 of the Civil Code of the State of California.

8      45.     Plaintiff reasonably relied upon the misrepresentations of the defendants, and

9 each of them, and in reliance on same continued to work with and around asbestos and asbestos-

10 containing products. Plaintiff would have taken steps to protect his health and life had he

11 known the facts, which were known to the defendants, and each of them, about exposure to

12 asbestos and asbestos-containing products. Plaintiff would not have knowingly continued to

13 work in an unsafe environment. He had no knowledge of the foregoing facts and actions of the

14 defendants, and each of them, at the time when they were committed, and cannot be charged

15 with knowledge or inquiry thereof.

16      46.     As a direct and legal result of the conduct of the defendants, and each of them,

17 plaintiff developed an asbestos-related disease known and designated as lung cancer, and

18 related conditions and disabilities as previously set forth, and as a further direct and legal result

19 plaintiff has incurred damages in excess of $50,000.00 in addition to the special damages

20 alleged herein.

21            WHEREFORE, plaintiff prays judgment as hereinafter set forth.

22 **SIXTH CAUSE OF ACTION**<br>**(Civil Conspiracy)**

23

24 AS AND FOR A SIXTH CAUSE OF ACTION, plaintiff JACK L. HOWARD complains

of defendants, and each of them, and alleges:

25

26      47.     Plaintiff, by this reference, hereby incorporates and makes a part hereof, as

though fully set forth herein, each and every allegation contained in the First Cause of Action,

27 except allegations pertaining to negligence and agency, and the Fifth Cause of Action

28      48.     At all times mentioned, the defendants, and each of them, knowingly and willfully

20

Complaint for Personal Injuries

1 | conspired and agreed among themselves to perpetrate upon plaintiff the unlawful acts

2 | complained of in the First and Fifth Causes of Action which are incorporated herein as the Sixth

3 | Cause of Action.

4 |     49.    The defendants, and each of them, and at least one of them, did the acts herein

5 | alleged in Paragraph 43 of the Fifth Cause of Action in furtherance of the conspiracy and

6 | agreement as herein alleged, and also acted in furtherance of a conspiracy and agreement

7 | between and among the defendants, and each of them, to violate State and Federal laws and

8 | regulations, the exact nature and extent of which are unknown at this time, but known full well

9 | to defendants, and each of them.

10 |     50.    As a direct and legal result of the conduct of the defendants, and each of them,

11 | plaintiff developed an asbestos-related disease known and designated as lung cancer, and

12 | related conditions and disabilities as previously set forth, and as a further direct and legal result

13 | plaintiff has incurred damages in excess of $50,000.00 in addition to the special damages

14 | alleged herein.

15 |     WHEREFORE, plaintiff prays judgment as hereinafter set forth.

16 | **SEVENTH CAUSE OF ACTION**
**(Enterprise Liability)**

17 |

18 | AS AND FOR A SEVENTH CAUSE OF ACTION, plaintiff JACK L. HOWARD

complains of the defendants, and each of them, and alleges:

19 |

20 |     51.    Plaintiff incorporates by reference as though fully set forth herein, each and every

allegation of the First, Second, Third, and Fifth Causes of Actions herein.

21 |

22 |     52.    The defendants, and each of them, mined, milled, manufactured, tested, developed,

processed, imported, converted, compounded, assembled, fabricated, modified, designed,

23 | specified, approved, sold, supplied, distributed, delivered, packaged, labeled, advertised,

24 | warranted, applied, installed, inspected and otherwise marketed asbestos and asbestos-

25 | containing products. These products were defective and carried with them an inadequate

26 | warning, or no warning at all, regarding the health hazards associated with asbestos-exposure.

27 | The defendants, and each of them, knew or should have known of the defective and hazardous

28 | nature of the asbestos and asbestos-containing products at the time said products were placed

Complaint for Personal Injuries

1 │ into the stream of commerce.

2 │     53.    Plaintiff, at all times pertinent herein, was unaware and cannot be charged with
3 │ knowledge of the health hazards associated with exposure to asbestos fibers released from the
4 │ aforealleged asbestos and asbestos-containing products of the defendants, and each of them. On
5 │ the other hand, the defendants, and each of them, introduced these products into the market
6 │ where plaintiff worked and were in a position to prevent harmful exposures to all persons
7 │ therein, including the plaintiff.

8 │     54.    Plaintiff, at all times pertinent herein, was exposed to asbestos fibers released from
9 │ asbestos and asbestos-containing products which are and were fungible in color, size, shape,
10 │ texture, and function. Said products were similar in appearance and composition, and indistinct
11 │ one from the other, and through no fault of the plaintiff these products cannot be traced to a
12 │ particular defendant or other entity.

13 │     55.    In this action, plaintiff has joined as defendants a substantial share of the
14 │ manufacturers and suppliers of the asbestos and asbestos-containing products which comprised
15 │ the relevant market within which plaintiff was exposed to asbestos fibers. At trial, plaintiff will
16 │ prove the respective market share of the defendants, and each of them, during all times relevant
17 │ herein. The liability of the defendants, and each of them, is proportional to their respective
18 │ market share percentage, consistent with the rules set forth in Sindell v. Abbott Laboratories.

19 │     56.    As a direct and legal result of the conduct of the defendants, and each of them,
20 │ plaintiff developed an asbestos-related disease known and designated as lung cancer, and
21 │ related conditions and disabilities as previously set forth, and as a further direct and legal result
22 │ plaintiff has incurred damages in excess of $50,000.00 in addition to the special damages
23 │ alleged herein.

24 │     WHEREFORE, plaintiff prays judgment as hereinafter set forth.

25 │ **EIGHTH CAUSE OF ACTION**<br>**(Loss of Consortium)**

26 │

27 │     AS AND FOR AN EIGHTH CAUSE OF ACTION, plaintiff YVONNE M. HOWARD

│ complains of the defendants, and each of them, and alleges:

28 │

22

Complaint for Personal Injuries

1    57. Plaintiff YVONNE M. HOWARD brings this action on her behalf and, unless
2    otherwise indicated, hereinafter is referred to as "plaintiff."

3    58. Plaintiff refers to and incorporates herein by reference the First through Seventh
4    Causes of Action of this complaint.

5    59. Plaintiff YVONNE M. HOWARD and her spouse JACK L. HOWARD are, and at all
6    times relevant herein were, married to one another.

7    60. Prior to said injuries, plaintiff JACK L. HOWARD was able to and did perform his
8    duties as a spouse.    Subsequent to developing and suffering the debilitating effects of lung
9    cancer, and as a proximate result thereof, plaintiff JACK L. HOWARD has been, and continues
10   to be, unable to perform the necessary duties of a spouse. He is no longer able to perform the
11   work and service usually performed by him in the care, maintenance, and management of the
12   family home. He will be unable to perform such work, services and duties in the future. By
13   reason thereof, plaintiff YVONNE M. HOWARD has been deprived and will continue to be
14   deprived of her spouse's performance of his necessary duties, all to her damage. As a direct and
15   legal result thereof she has suffered special damages to be shown according to proof.

16   61. As a further direct and legal result of the conduct of the defendants, and each of them,
17   and JACK L. HOWARD's debilitation from lung cancer, he is no longer able to provide the
18   level and quality of companionship to his wife that he did before he developed this disease. As
19   a further direct and legal result of this debilitation, plaintiff YVONNE M. HOWARD has
20   suffered and in the future will continue to suffer the loss of her husband's ability to provide
21   love, companionship, comfort, affection, society, solace, and moral support, all to her damage.
22   As a direct and legal result she has suffered a pecuniary loss in excess of $50,000.00 in addition
23   to her special damages.

24   WHEREFORE, plaintiff YVONNE M. HOWARD prays judgment against all defendants
25   as follows:

26   1. General damages in an amount in excess of $50,000.00 in accordance with proof;

27   2. Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance
28   with proof;

23

1     3. Punitive and exemplary damages in an amount found appropriate by the trier of fact in

2 accordance with proof;

3     4. Special damages in accordance with the proof;

4     5. Prejudgment interest and post-judgment interest in accordance with law;

5     6. Costs of suit; and

6     7. Such and other and further relief as the Court deems just and proper.

7     WHEREFORE, plaintiff JACK L. HOWARD prays judgment against all defendants as

8 follows:

9     1. General damages in an amount in excess of $50,000.00 in accordance with the proof;

10     2. Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance

11 with proof;

12     3. Punitive and exemplary damages in an amount found appropriate by the trier of fact in

13 accordance with the proof;

14     4. Special damages in accordance with the proof;

15     5. Prejudgment interest and post-judgment interest in accordance with law;

16     6. Costs of suit; and

17     7. Such other and further relief as the Court deems just and proper.

18

19 DATED: July 9, 2007         **HOBIN, SHINGLER & SIMON, LLP**

20

21         By: _____

22             RONALD F. SHINGLER
            Attorneys for Plaintiffs

23

24

25

26

27

28

24

Complaint for Personal Injuries

**EXHIBIT B**

07/09/2007 MON 10:07  FAX 75: .153                                                        ☒002/030

7-23-07
3:00 pm

3817189

## SUMMONS
### (CITACION JUDICIAL)

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SEE ATTACHED LIST

**FILED BY FAX**
ALAMEDA COUNTY

July 09, 2007

CLERK OF
THE SUPERIOR COURT
By Rosanne Case, Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*
JACK L. HOWARD and YVONNE M. HOWARD

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
ALAMEDA COUNTY SUPERIOR COURT
1225 FALLON STREET
1225 FALLON STREET
OAKLAND, CA  94612
RENE C. DAVIDSON

CASE NUMBER:
(Número del Caso): RG07334596
Via Facsimile

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
RONALD J. SHINGLER (C.S.B. 142089)                    Phone        (925) 757-7585
HOBIN, SHINGLER & SIMON, LLP                           Fax          (925) 757-0153
1011 A STREET
ANTIOCH, CA  94509
DATE: July 9, 2007       **PAT S. SWEETEN** Clerk, by _____, Deputy
*(Fecha)*   July 09, 2007                    *(Secretario)*                          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐  as an individual defendant.
2. ☐  as the person sued under the fictitious name of *(specify):*

3. ☑  on behalf of *(specify):* Viad Company

under:  ☑ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☐  by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
℠ Plus

Code of Civil Procedure §§ 412.20, 465




## JACK HOWARD, ET AL. v. ASBESTOS CORPORATION LIMITED, ET AL.

### SUMMONS ATTACHMENT

ASBESTOS CORPORATION LIMITED; ALFA LAVAL, INC.; AMERICAN LAUNDRY MACHINERY, INC.; BAILEY METER COMPANY; BORGWARNER MORSE TEC INC. as successor-in-interest to BORG-WARNER CORPORATION; BUFFALO PUMPS, INC.; BW/IP INC. formerly known as BORG-WARNER INDUSTRIAL PRODUCTS, successor to BYRON JACKSON PUMPS; CARLISLE CORPORATION; CARVER PUMP COMPANY; CERTAINTEED CORPORATION; COFFIN TURBO PUMP, INC.; CROWN CORK AND SEAL COMPANY, INC.; CSR, LTD. also known as COLONIAL SUGAR REFINING CO.; BABCOCK BORSIG POWER, INC. formerly known as DB RILEY formerly known as RILEY STOKER CORPORATION; DAIMLERCHRYSLER CORPORATION; DURAMETALLIC CORPORATION; EATON CORPORATION, individually and as successor-in-interest to CUTLER-HAMMER; ELLIOTT COMPANY; FLOWSERVE CORPORATION, individually and as successor-in-interest to ALDRICH PUMPS and DURCO PUMPS; FORD MOTOR COMPANY; FOSTER WHEELER, LLC; FRANKLIN ELECTRIC CO., INC.; GARLOCK, INC.; ELECTRIC COMPANY; GENERAL MOTORS CORPORATION; GENERAL REFRACTORIES COMPANY; GEORGIA-PACIFIC CORP.; GOULDS PUMPS, INC.; HONEYWELL INTERNATIONAL INC., individually and as successor-in-interest to ALLIED SIGNAL and BENDIX; HOPEMAN BROTHERS, INC.; IMO INDUSTRIES INC., individually and as parent, alter ego, formerly known as, doing business as, and successor-in-interest to IMO DELAVAL INC.; INGERSOLL-RAND COMPANY; J.T. THORPE & SON, INC.; KAISER GYPSUM COMPANY, INC.; LAMONS GASKET COMPANY formerly known as POWER ENGINEERING & EQUIPMENT CO.; NORTHERN PUMP, a division of MCNALLY INDUSTRIES LLC; OWENS-ILLINOIS, INC.; RAPID AMERICAN CORPORATION; PARKER-HANNIFIN CORPORATION; PATTERSON PUMP COMPANY, A SUBSIDIARY OF GORMAN-RUPP COMPANY, individually and as successor-in-interest to C.H. WHEELER MANUFACTURING and GRISCOM-RUSSELL; PLANT INSULATION; PNEUMO ABEX CORPORATION; SOCO WEST, INC., formerly known as BRENNTAG WEST, INC., formerly known as SOCO-LYNCH CORPORATION; STERLING FLUID SYSTEMS (USA), INC., formerly known as PEERLESS PUMPS; SULZER PUMPS (US) INC. individually and as successor-in-interest to PACO PUMPS, INC.; THOMAS DEE ENGINEERING, CO., INC.; THORPE INSULATION COMPANY; UNIROYAL, INC.; VIACOM INC., successor by merger to CBS CORPORATION and formerly known as WESTINGHOUSE ELECTRIC CORPORATION; VIAD CORP.; WARREN PUMPS, INC.; and FIRST DOE through TWO HUNDREDTH DOE inclusive.